UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VITALITY SYSTEMS, INC.,

    Plaintiff,

v.                                                    Case No. 8:09-cv-200-T-24EAJ

SOGEVAL LABORATORIES, INC.
and SOGEVAL, S.A.,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court on a dispositive motion for summary judgment filed by Defendants Sogeval Laboratories, Inc. and Sogeval, S.A. (collectively, "Sogeval") (Doc. No. 15.) Plaintiff Vitality Systems, Inc. ("Vitality") filed a response and supplement in opposition to the motion. (Doc. Nos. 26, 36.) Sogeval filed a reply. (Doc. No. 37.) For the reasons stated herein, the motion is denied.

**I.    Background**

This case involves a contract by which defendant Sogeval purchased the business assets of plaintiff Vitality. Both companies are in the business of manufacturing and distributing animal health products.

According to the final terms of the agreement, Sogoval was required to pay $7,765,627 to Vitality at closing and to make two deferred payments based on the financial results of Vitality's business during the two years subsequent to the closing. Joseph Decl., Ex. 1. As contemplated by the agreement, Sogeval also entered into separate employment agreements with Brian Nugent and Steven Watters–two of Vitality's shareholders who were responsible for Vitality's day-to-

day operations–under which they were to serve as vice presidents reporting directly to Sogeval's president, Thomas Bell. *Id.* at Ex. 4. The agreement also contained a provision that accelerated the calculation and payment of the two deferred payments in the event that Nugent and Watters were terminated without cause during the two-year deferred-payment period. *Id.* at Ex. 1 at § 3.4.6(a).

On December 26, 2008, Sogeval terminated the employment of Nugent and Watters. Joseph Decl. at ¶ 5; Nugent Decl. at ¶ 31. Their termination occurred during the two-year deferred-payment period, thereby accelerating the calculation and payment of the deferred payments. *Id.* According to the agreement, Sogeval was required to make the deferred payments within 30 days of the termination. Joseph Decl., Ex. 1 at § 3.4.6(a); Nugent Decl. at ¶ 32.

By letter dated January 28, 2009, counsel for Sogeval informed counsel for Vitality that it had determined that its deferred payment obligations to Vitality totaled $5,358,760, and that it was transmitting that amount to Vitality by electronic fund transfer, "in full satisfaction" of Sogeval's liability to Vitality for all deferred payments under the agreement. Joseph Decl., Ex. 5. The same amount was transferred to Vitality's account by Sogeval's bank in the afternoon of January 29, 2009. *Id.* at Exs. 6,7.

The following day, Vitality's counsel acknowledged receipt of Sogeval's letter and the $5,358,760 payment, which Vitality's counsel described as a "payment . . . toward [Sogeval's] Deferred Payment obligation." *Id.* at Ex. 8. However, Vitality's counsel stated that the company could not agree with Sogeval's calculation of the deferred payments, and instead, asserted that Vitality was entitled to deferred payments of approximately $25 million. *Id.* Vitality's counsel

2

suggested that the parties "submit these issues to mediation" in order "to expeditiously reach a mutually satisfactory business compromise." *Id.*

Sogeval's counsel responded by letter on February 2, 2009. *Id.* at Ex. 9. He informed Vitality's counsel that his client declined to submit the dispute to mediation, and instead, asked that Vitality return the $5,358,760 payment. *Id.* Sogeval's counsel stated that if Sogeval did not receive the returned payment by February 4, 2009, it would regard Vitality's retention of the funds as "constituting Vitality's acceptance thereof in full satisfaction of Sogeval's liability under section 3.4 [of the agreement]." *Id.*

By letter dated February 4, 2009, counsel for Vitality again confirmed that Vitality disputed Sogeval's calculation of the deferred payments and "[did] not accept the funds wired as full satisfaction of [Sogeval's] Deferred Payment obligation." *Id.* at Ex. 10. Vitality's counsel further noted that, because Sogeval refused to have the $5,358,760 payment moved into an escrow account pending the resolution of the dispute, Vitality decided to transfer the payment into a separate trust account to be controlled by its counsel until a final resolution could be reached. *Id.*

On February 5, 2009, Sogeval's counsel responded by letter to Vitality's counsel, demanding that Vitality return the funds to Sogeval by wire transfer by February 6, 2009. Nugent Decl., Ex. L. Sogeval's counsel explained: "Once Vitality decided not to accept the funds in full satisfaction of Sogeval's obligation, it had no option other than to return the funds to Sogeval, and its 'transfer [of] the funds into a separate trust account . . . controlled by [Vitality's counsel],' as noted in your February 4 letter, is an act of dominion wrongfully asserted over, and inconsistent with, Sogeval's possessory rights in those funds." *Id.*

On February 6, 2009, Vitality initiated this suit against Sogeval, alleging that Sogeval breached its obligations to make deferred payments under the agreement, breached the implied covenant of good faith and fair dealing, and made misrepresentations intended to induce Vitality into entering the agreement. Sogeval denies these allegations and asserts the affirmative defense of accord and satisfaction.

The Court notes that this case is in the early stages of litigation, and the parties have yet to engage in discovery. Sogeval's motion is supported by a declaration from its counsel Michael Joseph, as well as the contract and employment agreements at issue and copies of correspondence between the parties' counsel. Likewise, Vitality's response to the summary judgment motion is supported by declarations from its president Brian Nugent, its Chief Executive Officer Stephen Watters, another owner of the company Jugal Taneja, and its counsel Julio Esquivel, as well as exhibits similar to those filed by Sogeval.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

4

and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III. Discussion

Sogeval asserts that it is entitled to summary judgment for two reasons. First, it argues that Vitality should be precluded from seeking more than the $5,358,760 payment because Sogeval and Vitality entered into an accord in which Vitality accepted that amount in full satisfaction of Sogeval's liability under the agreement. Second, Sogeval contends that Vitality's misrepresentation claim is barred by the "anti-reliance" provision contained in the agreement.

#### 1. Sogeval's Affirmative Defense of Accord and Satisfaction

"An accord is an agreement for the settlement of some previously existing claim by a substituted performance." *Jacksonville Elec. Auth. v. Draper's Egg & Poultry Co.*, 557 So. 2d 1357 (Fla. 1990) (citation and quotation omitted).[1] "Discharge of a claim by accord and satisfaction means a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such performance by the claimant as full satisfaction of his claim." *Id.* (citation and quotation omitted). To establish an accord and satisfaction defense under Florida law, a defendant must show: (1) an existing dispute between the parties regarding the proper amount owed from one party to the other; (2) a mutual intent to effect a

---

[1]The parties agree that the issue of whether Vitality's retention of the $5,358,760 payment constitutes an accord and satisfaction is governed by Florida law.

settlement of the existing dispute by a superceding agreement; and (3) the debtor's tender and the creditor's acceptance of performance of the new agreement in full satisfaction and discharge of the prior disputed obligation. *Republic Funding Corp. of Fla. v. Juarez*, 563 So. 2d 145, 146 (Fla. 5th DCA 1990).

Sogeval contends that it tendered its January 29, 2009 payment of $5,358,760 to Vitality on the condition that it was to be accepted, if at all, as full satisfaction of its liability to Vitality for the deferred payments owed under the agreement. Sogeval further contends that Vitality understood that the payment was made on this condition, and that Vitality's retention and transfer of the payment to a trust account maintained by its counsel created an accord and satisfaction of Sogeval's liability under the agreement, including the deferred payments.

After reviewing the record, the Court concludes that factual issues remain regarding whether Vitality accepted the $5,358,760 payment "in full satisfaction and discharge" of Sogeval's obligation to make deferred payments under the agreement. *Republic Funding*, 563 So. 2d at 146. An accord and satisfaction, like any contract, must contain an offer, acceptance, and consideration. *Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986). Sogeval's January 28, 2009 letter, in which it informed Vitality that it was transferring $5,358,760 to Vitality "in full satisfaction" of its liability for all deferred payments, can best be described as an offer to settle the amount owed under the agreement.

Sogeval, however, has not put forth definitive evidence that Vitality accepted this offer on the terms Sogeval offered. Vitality transferred the payment to an account controlled by its counsel, an act which may be evidence of its acceptance of such substitute payment in full

6

satisfaction of Sogeval's liability under the agreement. However, in each of its subsequent letters, Vitality repeatedly and explicitly stated that it did not agree with Sogeval's calculation of the deferred payments and "[did] not accept the funds wired as full satisfaction of [Sogeval's] Deferred Payment obligation." Vitality even suggested that the money be deposited in escrow while the parties mediate the dispute. Indeed, Sogeval acknowledged in its February 5th letter that Vitality had "decided not to accept the funds in full satisfaction of Sogeval's obligation." Based on this evidence, there are material factual issues as to whether the parties reached a superceding agreement that was mutually intended to effect a settlement of the outstanding deferred payments. *Jacksonville Elec. Auth.*, 557 So. 2d at 1359 (noting that "[t]he issue . . . boils down to whether, in the minds of [the parties], the . . . payment was intended to extinguish all claims, known and unknown").

The Court also declines to follow *Burke Co. v. Hilton Development Co.*, 802 F. Supp. 434, 436 (N.D. Fla. 1992), and similar cases cited by Sogeval, in which courts found that an accord and satisfaction occurred when a negotiable instrument, such as a check, was tendered for less than the full amount in dispute and the instrument indicated on its face that it was being tendered in full satisfaction of the dispute. The *Burke* court explained: "When a creditor negotiates the tendered check with knowledge of the debtor's intent . . . [that the check is tendered to discharge the original debt], he is then bound to the agreement and cannot later turn around and sue for the remaining balance due under the former dispute." *Id.* at 439.

These cases are distinguishable, however, because in each of them the court relied on the cashing of the check as evidence of the creditor's acceptance of the new agreement. For example, in *Martinez v. South Bayshore, Tower, L.L.L.P.*, 979 So. 2d 1023, 1024 (Fla. 3d DCA

2008), the Court noted: "Here, cashing the checks satisfied the elements of accord and satisfaction. It showed that the [creditors] intended to effectuate a settlement of the dispute and also constituted actual performance of the new agreement." In the instant case, Sogeval sent the $5,358,760 payment to Vitality's account by wire transfer–not by check or other negotiable instrument. The record does not show that Vitality was required to take any affirmative action, similar to the cashing of a check, to receive that wire transfer. Therefore, at this stage of the litigation, factual issues remain as to whether Vitality's retention of the payment constituted its acceptance of that payment as performance of a new agreement between the parties.

2.   **Vitality's Misrepresentation Claim**

In the amended complaint, Vitality alleges that Sogeval made a series of material misrepresentations to induce Vitality into selling its assets. In particular, it alleges that these misrepresentations were intended to convince Vitality to accept less than full value at closing and to accept a deferred payment schedule that ultimately benefitted only Sogeval. Examples of the alleged misrepresentations include: (1) that Sogeval's sales force would be combined with Vitality's sales force to achieve maximum sales of the products of both companies; (2) that Sogeval's sales representatives would be trained to sell, and properly incentivized to sell, Vitality's products; and (3) that the deferred payment model would maximize the amount Vitality would receive as a result of the two entities entering into a combined business model, with Watters and Nugent leading the Vitality division. Am. Compl. ¶¶ 12, 13, 16, 96.

Sogeval argues that the "anti-reliance" clause contained in the agreement bars Vitality's

misrepresentation claim.[2]  That clause reads as follows:

> This Agreement, together with the Exhibits and Schedules hereto . . . , state the entire understanding among the parties with respect to the subject matter hereof, and supersede all prior oral and written communications and agreements, and all contemporaneous oral communications and agreements, with respect to the subject matter hereof including all confidentiality letter agreements and letters of intent previously entered into among some or all of the parties hereto.  No amendment or modification of this Agreement shall be effective unless in writing and signed by the party against whom enforcement is sought . . . .

Joseph Decl. Ex.1 at § 12.7.  Sogeval also points to section 5.3 of the agreement where Vitality acknowledged and agreed that "[n]o representations or warranties are made by Buyer to Seller except as expressly set forth in this Agreement . . . ." *Id.* at § 5.3.  Sogeval contends that these provisions, taken together, "can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

The Court, however, disagrees with Sogeval's characterization of this provision as an anti-reliance clause.  In *Kronenberg*, the court examined whether an integration clause similar to the provision at issue here could be considered an "anti-reliance" clause.  In determining that the integration clause was not "anti-reliance" in nature, the court found "strikingly absent . . . the presence of a clear and unambiguous contractual provision in which the plaintiffs forthrightly affirm that they are not relying upon any representation or statement of fact not contained within" the contract. *Id.* at 591.

---

[2]The parties have not fully addressed whether Florida or Delaware contract law applies to this claim, and there appears to be some dispute over the choice of law issue.  The Court shall apply Delaware law, but notes that summary judgment is equally inappropriate under Florida law.

Likewise, the provision at issue here is what would ordinarily be labeled a standard integration clause, in that it states that the agreement represents "the entire understanding among the parties with respect to the subject matter hereof, and supersede[s] all prior oral and written communications and agreements." This clause is what the *Kronenberg* court would characterize "as simply indicating that there were no separate oral contracts and that there was no separate consideration." *Id.* at 593. Moreover, the provision that states that "[n]o representations or warranties" were being made by Sogeval to Vitality "except as expressly set forth in this Agreement" cannot be read to mean that Vitality was releasing Sogeval from any liability associated with the representations or warranties. Therefore, summary judgment on Vitality's misrepresentation claim is inappropriate at this stage of the litigation.

## IV. Conclusion

In conclusion, the Court finds that genuine issues of material fact remain as to whether Sogeval and Vitality entered into an accord under which Vitality accepted Sogeval's $5,358,760 payment in full satisfaction of Sogeval's liability under the agreement. Moreover, Sogeval has not shown that Vitality's misrepresentation claim is barred as a matter of law by the provisions of the agreement. Accordingly, Sogeval's motion for summary judgment must be **DENIED**. Furthermore, Sogeval's motion for oral argument on the motion for summary judgment (Doc. No. 17) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, this 16th day of July, 2009.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge