UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VITALITY SYSTEMS, INC.,

    Plaintiff,

v.                                                         Case No. 8:09-cv-200-T-24-EAJ

SOGEVAL LABORATORIES, INC.
and SOGEVAL, S.A.,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court on cross motions for summary judgment (Doc. 56, 74) and the responses thereto (Doc. 74, 84). For the reasons stated herein, both motions are denied.

**I.    Background**

This case involves a contract by which Defendants Sogeval Laboratories, Inc. and Sogeval, S.A. (collectively, "Sogeval") purchased the business assets of Plaintiff Vitality Systems, Inc. ("Vitality").[1] Both Sogeval and Vitality are in the business of manufacturing and distributing animal health products.

According to the terms of the Asset Acquisition Agreement (the "AAA"), Sogeval was required to pay $7,765,627 to Vitality at closing and to make two deferred payments based on the revenue generated by Vitality's former assets during the two years after the closing. (Doc. 16, Ex. 1.) Also under the AAA, Sogeval entered into separate employment agreements with

---

[1]Sogeval Laboratories, Inc. purchased the assets, and Sogeval, S.A. guaranteed the amount owed on the purchase.

Brian Nugent and Steven Watters – two of Vitality's shareholders who were responsible for Vitality's day-to-day operations – under which they were to serve as vice presidents reporting directly to Sogeval's president, Thomas Bell. (Doc. 16, Exs. 4-5.) The AAA also contained a provision that accelerated the calculation and payment of the two deferred payments in the event that Nugent and Watters were terminated without cause during the two-year deferred-payment period. (Doc. 16, Ex. 1 at § 3.4.6(a).)

June 1, 2008 began the two-year period upon which the deferred payments were based. On December 26, 2008, Sogeval terminated Nugent and Watters without cause. (Doc. 16 at ¶ 5; Doc. 27 at ¶ 31.) Because their termination occurred during the two-year deferred-payment period, the AAA required Sogeval to accelerate the deferred payments owed to Vitality and to make the deferred payments within thirty days of Nugent and Watters' termination. (Doc. 16, Ex. 1 at § 3.4.6(a); Doc. 27. at ¶ 32.)

Section 3.4 of the AAA addressed deferred payments. Pertinent subparts of section 3.4 are summarized below:

- 3.4.1 – The First Deferred Payment was to equal 5 times the difference between the Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA") from the First Year (the "First Year EBITDA") and the EBITDA from 2007 (the "2007 EBITDA"). The parties agree that the 2007 EBITDA equaled $1,510,826. In other words:

    **First Deferred Payment = 5 x (First Year EBITDA – $1,510,826).**

    The Second Deferred Payment was to equal 5 times the difference between the EBITDA from the Second Year (the "Second Year EBITDA") and the greater of

either the First Year EBITDA or the 2007 EBITDA. In other words:

**Second Deferred Payment =**

**5 x (Second Year EBITDA – the greater of :   First Year EBITDA OR $1,510,826).**

- 3.4.6(a) – If a "fundamental event" – which included, among other occurrences, the termination without cause of Nugent and Watters – occurred during one of the deferred payment years, then Sogeval would be required to accelerate and pay, within thirty days of the event, all deferred payments not yet paid. Under these circumstances, the First Year EBITDA was to be deemed $1,833,000 for purposes of calculating the First Deferred Payment, and the Second Year EBITDA was to be deemed $2,039,000 for purposes of calculating the Second Deferred Payment. However, if a fundamental event occurred after six months had passed in a given deferred payment year, the deemed EBITDA figure for that year would be the greater of either (1) $1,833,000 for the First Year or $2,039,000 for the Second Year; or (2) the average monthly EBITDA for the months completed in that year multiplied by twelve.

(Doc. 16, Ex. 1.)

In addition to entering into the AAA, Vitality and Sogeval, as well as Nugent and Watters, entered into a Restrictive Covenant Agreement (the "RCA"). (Doc. 57, Ex. 1.) In section 2(a) of the RCA, Vitality, Nugent, and Watters agreed not to engage, directly or indirectly, in a business that competes with Sogeval for a period of five years after signing the AAA. However, section 2(g) of the RCA provides that if Sogeval failed to pay any undisputed amount of any deferred payment within thirty days after Vitality gives written notice to Sogeval

3

regarding Sogeval's failure, then Vitality, Nugent, and Watters would be released from their agreement not to compete with Sogeval contained in section 2(a) of the RCA.

By letter dated January 28, 2009, counsel for Sogeval informed counsel for Vitality that it had determined that its deferred payment obligations to Vitality totaled $5,358,760 and that it was transmitting that amount to Vitality by electronic fund transfer "in full satisfaction" of Sogeval's liability to Vitality for all deferred payments under the AAA. (Doc. 16, Ex. 6.) Sogeval transferred the same amount to Vitality's account on January 29, 2009. (Doc. 16, Ex. 8.)

The following day, Vitality's counsel acknowledged receipt of Sogeval's letter and the $5,358,760 payment, which Vitality's counsel described as a "payment . . . toward [Sogeval's] Deferred Payment obligation." (Doc. 16, Ex. 9.) However, Vitality's counsel stated that Vitality could not agree with Sogeval's calculation of the deferred payments. Instead, Vitality's counsel asserted that Vitality was entitled to deferred payments of approximately $25 million. (Doc. 16, Ex. 9.) Vitality's counsel suggested that the parties "submit these issues to mediation" in order "to expeditiously reach a mutually satisfactory business compromise." (Doc. 16, Ex. 9.)

Sogeval's counsel responded by letter on February 2, 2009. (Doc. 16, Ex. 10.) He informed Vitality's counsel that his client declined to submit the dispute to mediation and asked instead that Vitality return the $5,358,760 payment. (Doc. 16, Ex. 10.) Sogeval's counsel stated that if Sogeval did not receive the returned payment by February 4, 2009, it would regard Vitality's retention of the funds as "constituting Vitality's acceptance thereof in full satisfaction of Sogeval's liability under section 3.4 [of the AAA]." (Doc. 16, Ex. 10.)

By letter dated February 4, 2009, counsel for Vitality again confirmed that Vitality

4

disputed Sogeval's calculation of the deferred payments and "[did] not accept the funds wired as full satisfaction of [Sogeval's] Deferred Payment obligation." (Doc. 16, Ex. 11.) Vitality's counsel further noted that, because Sogeval refused to have the $5,358,760 payment moved into an escrow account pending the resolution of the dispute, Vitality decided to transfer the payment into a separate trust account to be controlled by its counsel until a final resolution could be reached. (Doc. 16, Ex. 11.)

On February 5, 2009, Sogeval's counsel responded by letter to Vitality's counsel, demanding that Vitality return the funds to Sogeval by wire transfer by February 6, 2009. (Doc. 27, Ex. 12.) Sogeval's counsel explained: "Once Vitality decided not to accept the funds in full satisfaction of Sogeval's obligation, it had no option other than to return the funds to Sogeval, and its 'transfer [of] the funds into a separate trust account . . . controlled by [Vitality's counsel],' as noted in your February 4 letter, is an act of dominion wrongfully asserted over, and inconsistent with, Sogeval's possessory rights in those funds." (Doc. 27, Ex. 12.)

On February 6, 2009, Vitality initiated this suit against Sogeval, alleging that Sogeval breached its obligations to make deferred payments under the AAA, breached the implied covenant of good faith and fair dealing, and made representations intended to induce Vitality into entering into the AAA.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and

resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id.

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id. In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**III.    Discussion**

Vitality asserts it is entitled to summary judgment on three grounds: (1) Sogeval breached the AAA by failing to pay Vitality the undisputed amount of the First Deferred Payment unconditionally within thirty days after Nugent and Watters' termination; (2) Sogeval breached the AAA by failing to pay Vitality the Second Deferred Payment of $2,640,870 within thirty days after Nugent and Watters' termination; and (3) Sogeval, S.A. breached its personal guarantee by failing to pay the deferred payments owed to Vitality. Sogeval responds that it is entitled to summary judgment declaring that no Second Deferred Payment is due under the AAA. Because there are genuine issues of material fact as to all of these claims, summary judgment must be denied with respect to all.

**A.    First Deferred Payment**

Vitality and Sogeval disagree about the amount due under the First Deferred Payment.

6

Sogeval asserts that its original payment of $5,358,760 fully satisfied its obligation under the First Deferred Payment. (Doc. 74 at 8.) Vitality disagrees with Sogeval's calculation of the First Deferred Payment for a number of factual reasons. (Doc. 56 at 9.) Because there is a genuine issue of material fact regarding the amount of the First Deferred Payment due under the AAA, summary judgment must be denied.

Vitality argues that despite the fact that the parties disagree about the amount of the First Deferred Payment, the parties agree that the First Deferred Payment equals at least $5,358,760. Vitality therefore argues that Sogeval breached the AAA to the extent that Sogeval failed to pay that undisputed amount without the attached condition that it would fully satisfy Sogeval's obligations under the AAA. The Court declines to make such a finding. Under the AAA, Sogeval was required to make certain deferred payments to Vitality, and Vitality has sued Sogeval for breaching the AAA by failing to make the required payments. Sogeval will be deemed to have breached the AAA if it did not make the required payments. However, the AAA contains no provision explicitly imposing a duty upon Sogeval to make a partial payment of an undisputed amount. Instead, the AAA requires Sogeval to pay Vitality the amount due according to the calculations contained in the AAA.

The Court surmises that Vitality's argument – that Sogeval breached the AAA by failing to pay the undisputed portion of the First Deferred Payment – is an attempt to get a declaration by the Court that would result in releasing Vitality, Nugent, and Watters from their agreement not to compete with Sogeval set forth in the RCA. However, Vitality has not sued Sogeval for a declaratory judgment relating to the RCA, and the Court will not give an advisory opinion on such matters.

**B. Second Deferred Payment**

The parties' motions illustrate enormous confusion over how much money, if any, is due under the Second Deferred Payment. Underlying this confusion is ambiguous contractual language. Either the parties did not contemplate calculating the Second Deferred Payment in the absence of an actual EBITDA figure for year one, or they failed clearly to express their intentions for how the Second Deferred Payment should be calculated in the absence of an actual EBITDA figure for year one. Failure to specify clearly and explicitly whether the deemed EBITDA provisions for year one contained in section 3.4.6(a) could be used to calculate the deferred payment for year two gives rise to at least three reasonable possibilities.[2] Either (1) the EBITDA for year one is zero (since year one was never completed), in which case the Second Deferred Payment would be:

$$5 \times (2,039,000 - 1,510,826^{3}) = \$2,640,870; \text{ or}$$

(2) the EBITDA for year one is the deemed EBITDA of $1,833,000 set forth in 3.4.6(a) of the AAA, in which case the Second Deferred Payment would be:

$$5 \times (2,039,000 - 1,833,000) = \$1,030,000; \text{ or}$$

(3) the EBITDA for year one is deemed to be the average EBITDA for June through November, 2008,[4] multiplied by twelve, as set forth in section 3.4.6(a) of the AAA, in which case the

---

[2] The following figures do not take into account adjustments for credits and expenses like the ones listed in Sogeval's Final Payment Worksheet (Doc. 16, Ex. 6).

[3] If the EBITDA for year one were zero, then the 2007 EBITDA amount would be used in the calculation.

[4] EBITDA figures listed on Sogeval's Final Payment Worksheet (Doc. 16, Ex. 6) for June through November, 2008 are as follows: June = $227,413; July = $241,417; August = $238,286; September = $255,788; October = $235,317; November = $186,449.

Second Deferred Payment would be:

$$5 \times (2{,}039{,}000 - 2{,}769{,}340) = \$0.$$

Because the language of the AAA is subject to conflicting, reasonable interpretations regarding the calculation of the Second Deferred Payment, the Court finds the calculation of the Second Deferred Payment set forth in 3.4.6(a) to be ambiguous.[5] Therefore, there is a genuine issue of material fact as to the amount of Second Deferred Payment, if any, Sogeval owes under the AAA. Accordingly, summary judgment must be denied with respect to this payment.

### C. Personal Guarantee

In its Complaint, Vitality alleges that Sogeval, S.A. breached the personal guarantee by failing to pay Vitality the amounts owed by Sogeval Laboratories, Inc. under the AAA. However, genuine issues of material fact exist as to (1) whether Sogeval Laboratories, Inc. has breached the AAA with respect to the First Deferred Payment; and (2) whether Sogeval Laboratories, Inc. owes Vitality a Second Deferred Payment, and if so, in what amount. Because Sogeval, S.A.'s liability under the personal guarantee is contingent upon a finding of non-payment by Sogeval Laboratories, Inc. of the deferred payments owed under the AAA, genuine issues of material fact exist as to Sogeval S.A.'s liability under the personal guarantee. Therefore, summary judgment on this claim must be denied.

---

[5] As the Court noted in its Order (Doc. 39) on Sogeval's first Motion for Summary Judgment (Doc. 15), the AAA contains a standard integration clause, which triggers the Parol Evidence Rule. Extrinsic evidence may, however, be used to interpret an agreement containing ambiguous terms. Nw. Nat'l Ins. Co. v. Esmark, Inc., 672 A.2d 41, 43 (Del. 1996) (citing Pellaton v. Bank of New York, 592 A.2d 473, 478 (Del. 1991)). Ambiguous contractual language is at the root of this claim; therefore, extrinsic evidence may eventually be needed and considered to resolve it.

**IV.    Conclusion**

The Court finds that genuine issues of material fact remain with respect to all of the above claims; therefore, both Motions for Summary Judgment (Doc. 56, 74) are **DENIED**.

Additionally, the Court reminds the parties that in its July 16, 2009 Order, the Court noted an unresolved choice of law issue. (Doc. 39 at 9 n. 2.) The parties are directed to address this issue with citations to authority in their Pretrial Statement, which is due on or before **May 7, 2010**.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of April, 2010.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record